**Nijola LILEIKIS, Plaintiff–Appellant,**

v.

**SBC AMERITECH, INC.,
Defendant–Appellee.**

No. 03–1573.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 23, 2003.

Decided Dec. 15, 2003.

Rehearing and Rehearing En Banc

Denied Jan. 22, 2004.*

* Circuit Judges John L. Coffey and Kenneth F. Ripple took no part in the consideration of the suggestion for rehearing en banc.

John A. Cook, Chicago, IL, for Plaintiff–Appellant.

Grady B. Murdock, Jr., Neal, Murdock & Leroy, Chicago, IL, for Defendant–Appellee.

Before MANION, KANNE, and EVANS, Circuit Judges.

### ORDER

Nijola Lileikis, who suffers from depression, alleges she was terminated from her employment with SBC Ameritech in violation of the ADA. The district court granted Ameritech's motion for summary judgment, holding that Lileikis is not disabled within the meaning of the ADA and that her employment was legitimately terminated for violations of Ameritech's attendance policy. Lileikis appeals, and we view the facts, which are fairly undisputed, in her favor.

Lileikis began working for Ameritech in 1981 as a directory assistance operator in Chicago Heights, Illinois. She was required to sit at a keyboard wearing a headset, answer calls, look up phone numbers for the callers, give the number to the caller, and immediately hang up and answer another call. According to Lileikis, she was required to finish a call every 7 seconds, 8 hours per day, 5 days per week, a total of some 1,200 calls each working day. To Lileikis, this was a stressful job as it required a lot of contact with rude customers. She says that everybody who had the job hated it, and everybody who could leave it did. Lileikis, however, felt she couldn't leave the job because other positions with Ameritech were in Oak Brook and Elmhurst, Illinois, places that were too far away.

With directory assistance, time is of the essence. Ameritech is subject to fines if its operators do not answer customer calls quickly enough. Maintaining the proper number of operators on duty at any given time is therefore critical. To do so, Ameritech employs several strategies. Operators can take unpaid time off when call volumes are low and can work overtime during times when call volume is high. Ameritech also maintains a progressive discipline policy to discourage absenteeism. Employees receive a series of warnings for unexcused absences. After a final warning, additional absences result in suspension. After suspension, Ameritech has the right to terminate employees who have further absences within 12 months. Twelve months of perfect attendance cancel the final warning for purposes of progressive discipline.

Lileikis's attendance history during her employment was spotty. She received warnings for poor attendance four times during her employment and was suspended five times through 1997.

Sometime in 1998, Lileikis began to suffer from depression. She could no longer talk on the telephone to customers without crying and had to pass every call to a service assistant. She was also unable to function at home. To cope, she took time off during low call-volume periods. She also called the employee assistance program to ask for help and was referred to a social worker. The social worker referred her to a psychiatrist, who verified she was suffering from "major depression single episode" and prescribed antidepressants.

During this time, Lileikis still had problems with her attendance. Although she

was able to maintain perfect attendance long enough to downgrade her discipline level in early 1998, by June of that year she was again told that her attendance was unsatisfactory. In August 1998 she was tardy for work and was told she would be subject to dismissal if she was tardy twice more or had another chargeable absence. On October 8, 1998, she received written notification that further absences could result in further discipline or dismissal.

On October 15 and 16, 1998, Lileikis was absent from work due to a migraine headache. When she returned to work she was reminded she could request these absences to be covered by the Family and Medical Leave Act (FMLA). She hadn't been seen by a doctor, though, so she was not eligible for leave under FMLA. As a result, she received her sixth suspension from work, this time for 5 days.

When Lileikis returned to work she met with her supervisor, who stressed the importance of coming to work as scheduled. Lileikis subsequently submitted a certificate completed by her psychiatrist requesting leave for October 15 and 16. Her psychiatrist, Dr. Vora, indicated she was suffering from "depression, insomnia, lack of motiva[tion], lack of concentration, crying spells, [and] social withdrawal." Dr. Vora also indicated that Lileikis was unable to perform work of any kind.

On December 3, 1998, Lileikis did not report to work. She called to say she couldn't come in because of acute back pain. On December 4, 1998, she filed a short-term disability report over the telephone. On December 7, 1998, Ameritech sent her a letter detailing disability benefits and required documentation. On January 7, 1999, Lileikis's social worker sent her clinical notes regarding Lileikis's condition to Ameritech, which included a two-page summary of Dr. Vora's diagnosis. On January 27, 1999, Ameritech sent Li-

leikis a letter denying her claim for disability because the documentation did not indicate a severe impairment or refer to her functional capacity to perform her job. The letter also explained her right to appeal this denial of benefits.

Lileikis did not appeal, but neither did she return to work. On February 22, 1999, her supervisor explained over the telephone that Lileikis had exhausted the 60 days of FMLA time arguably available to her, and she should keep the office informed of her plans to start working again. On March 17, 1999, Lileikis saw Dr. Vora again and told him that she would rather commit suicide than go back to her job. She also said she might be able to handle working a few hours per day. Although he didn't evaluate whether she really could work part-time, Dr. Vora wrote a note stating she could return to work part-time on March 22, 1999. Lileikis didn't give this note to Ameritech. On April 12, 1999, Lileikis called her supervisor and learned she had to come back to work in order to receive retirement benefits. On April 19, 1999, she called her supervisor to learn whether she would be fired or suspended if she went back to work. Her supervisor told her she would not be fired if she wanted to retire, but despite what her supervisor said, Lileikis assumed she would be fired if she returned to work, so she still stayed home. On July 3, 1999, Ameritech sent her a letter indicating that if she did not report to work by July 30, 1999, she would be terminated. When Lileikis did not contact the office by July 30, she was terminated.

Lileikis filed a charge of discrimination under the Americans with Disabilities Act (ADA) with the Illinois Department of Human Rights. She simultaneously filed a charge of discrimination with the EEOC. In a strange turn of events, her Illinois complaint was dismissed at the agency lev-

el for want of prosecution, the details of which aren't important here. She appealed this decision to the Illinois appellate court, but instead of following through on that appeal, she decided to pursue her claim in federal court, leaving her Illinois case to again be dismissed for want of prosecution. She filed this lawsuit December 14, 2001. Ameritech then filed its motion for summary judgment, claiming that the state court dismissal was entitled to preclusive effect and that Lileikis is not disabled within the meaning of the ADA. The district court granted summary judgment, finding that although Lileikis's claim was not precluded by res judicata, she was nevertheless not disabled within the meaning of the ADA and her employment was legitimately terminated for nondiscriminatory reasons.

We review grants of summary judgment *de novo*. *Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir.2003). Ameritech is entitled to summary judgment if there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Shermer v. Illinois Dep't of Transp.*, 171 F.3d 475, 477 (7th Cir.1999).

In order to establish a prima facie case of discrimination, Lileikis must show that "(1) she is disabled under the ADA; (2) she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) she has suffered from an adverse employment decision because of her disability." *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 483 (7th Cir.2002).

Under the ADA, a disability is a physical or mental condition that substantially limits one or more of a person's major life activities, when a person has a record of such a condition, or is regarded as having such a condition. 42 U.S.C. § 12102(2). A "qualified individual with a disability" is a person with a disability who, with or with-

out a reasonable accommodation, can perform the essential functions of the job. 42 U.S.C. § 12111(8).

■ Lileikis contends that her depression substantially limits her in the major life activity of working, and that she cannot perform the essential functions of the directory assistance position without the accommodation of part-time employment. However, in order to establish a claim that she is substantially impaired because of her inability to work, she must prove that she cannot perform either an entire class of jobs or a broad range of jobs in various classes. 29 C.F.R. § 1630.2(j)(3)(i). Inability to perform a single job because of an impairment does not support a claim that one has a substantially limiting impairment. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 493, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The flaw in Lileikis's case is that she never mentions a single other job that she is unable to do because of her depression, much less a class of jobs that she cannot perform. She is thus not a person with a disability under the ADA.

■ Even if Lileikis were disabled, she would need to show that she can perform the essential functions of her job with or without reasonable accommodation. Lileikis says she is able to perform the essential functions of her job with an accommodation of part-time work, but part-time work is not a reasonable accommodation for a full-time job. *DeVito v. Chicago Park Dist.*, 270 F.3d 532 (7th Cir.2001). Lileikis does not dispute the full-time nature of her job and has also testified that she cannot work full-time. The only argument to the contrary in Lileikis's brief is a single sentence: "There is nothing in Dr. Vora's statement of part-time work that indicated [Lileikis] never would be able to work full-time." But Lileikis, of course, has the burden of proving that there is a reasonable accommodation which would al-

low her to resume working full-time, and her "evidence" of this is lacking. She has failed to prove she can perform the essential functions of her job with or without a reasonable accommodation.

■ Finally, Lileikis's termination was clearly justified by her awful attendance record. She was suspended for attendance violations six separate times. Only her last suspension occurred while was suffering from depression, and it was for an absence unrelated to her depression. She stopped coming to work on December 3, 1998. She was not terminated until July 30, 1999, after almost 8 months of continuous unexcused absences. She was fired because of her poor attendance record and because she eventually stopped showing up for work, not because she was disabled.

The judgment of the district court is AF-FIRMED.